UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Walter Chmurynski, Michael Chmurynski, Anne D. Chmurynski, Dr. Dale Bishop, and Laura Alligood, *Plaintiffs*, <br><br> *v.* <br><br> Keith J. Robbins, Thomas Weber, William Ballinger, and the Town of Bozrah, *Defendant.* | Civil No. 3:10cv1303 (JBA) <br><br> July 1, 2011 |

RULING ON MOTION TO DISMISS

On January 14, 2011, Plaintiffs Walter Chmurynski, Michael Chmurynski, Anne D. Chmurynski, Dr. Dale Bishop, and Laura Alligood filed an Amended Complaint [Doc. # 14] claiming that by conducting an illegal search of their property and bringing retaliatory litigation in response to their exercise of free speech rights, Defendants Keith J. Robbins, Thomas Weber, William Ballinger, and the Town of Bozrah violated Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendment, and Article First, § 7 of the Connecticut Constitution and are also liable to Plaintiffs for abuse of process and intentional infliction of emotional distress ("IIED"). Defendants move [Doc. # 16] to dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. For the reasons stated below, the Motion to Dismiss will be granted in part and denied in part.

I. Factual Allegations

   A. Attempted Searches at 135 Scott Hill Road

Plaintiffs allege that during 2007, the Town of Bozrah ("Town") "conducted administrative proceedings upon an application for a subdivision of land abutting the Plaintiffs' 135 Scott Hill Road residence" in Bozrah, Connecticut. (Am. Compl. ¶ 16.) On June 14, 2007, Walter and Michael Chmurynski submitted petitions to the Town's Planning and Zoning Commission ("Commission") pursuant to Conn. Gen. Stat. § 22a-19 alleging "that the activities proposed in the application were reasonably likely to unreasonably pollute, destroy or impair the natural resources of the State of Connecticut." (*Id.* ¶¶ 17–18.) Walter and Michael Chmurynski spoke in opposition to the application at a June 14, 2007 Commission meeting and subsequent meetings and submitted testimony, written materials, and other evidence in support. (*Id.* ¶ 20.) Nonetheless, the Commission approved the application on August 9, 2007, and on August 23, 2007 Walter, Michael, and Anne Chmurynski appealed that decision pursuant to Conn. Gen. Stat. § 8-28. (*Id.* ¶¶ 21–22.)

According to Plaintiffs, at 9:46 a.m. on August 24, 2007, Defendant Keith Robbins, then–Bozrah First Selectman, sent an e-mail to Defendant Thomas Weber, the Bozrah Zoning Enforcement Officer ("ZEO") and Building Official, stating: "Please do an inspection of 135 Scott Hill Road for unregistered motor vehicles and other junk." (*Id.* ¶¶ 23–24.)[1] Weber "entered the 135 Scott Hill Road property" on August 24 and "began a search, or a series of searches, of the Plaintiffs' premises and possessions," having "neither sought nor

---

[1] Plaintiffs allege that this email was obtained by Walter Chmurynski pursuant to the Connecticut Freedom of Information Act and after a Connecticut Freedom of Information Commission hearing in which Robbins was found to have violated the Act "by failing to provide complainant with, at a minimum, the emails." (*Id.* ¶¶ 25–26.)

obtained a search or seizure warrant under Connecticut General Statutes § 54-33a." (*Id.* ¶¶ 28–29.) Plaintiff Dr. Dale Bishop "came outside shortly after the said search was commenced and refused to consent." (*Id.* ¶ 31.)

Plaintiffs allege that on September 1, 2007, Weber attempted to continue searching the property at 135 Scott Hill Road "and encountered Plaintiff Michael Chmurynski." (*Id.* ¶ 32.) Weber said to Michael Chmurynski: "Well yes, just one of those things. Well if you're gonna give me a hard time, I'll see what I can do to give you a hard time"; and pointed to the Chmurynski family's house and said "I bet you that's going to be the next problem." (*Id.* ¶¶ 33–34.) Michael Chmurynski refused to consent to the search. (*Id.* ¶ 35.) Plaintiffs allege that following this refusal, the "Town of Bozrah" instructed Weber: "If the property owner again refuses, tell them we will bring a lawsuit and get a judge to order an inspection." (*Id.* ¶ 36.)

B.   Superior Court Litigation

On February 29, 2008, when Defendant Ballinger was the Town's First Selectman, ZEO Weber and the Town sued Anne and Walter Chmurynski in Connecticut Superior Court, "seeking an injunction compelling their consent to a search of the 135 Scott Hill Road property in accordance with the August 24, 2007 directive of Defendant Robbins." (*Id.* ¶ 37–38.) Michael Chmurynski, Dr. Dale Bishop, and Laura Alligood were not named as parties in this injunction action. (*Id.* ¶ 37.) Plaintiffs allege that the verified complaint read in part:

> On or about August 24, 2007, the plaintiff ZEO received a complaint and information about the subject property being maintained in violation of the Town of Bozrah's zoning regulations, specifically that the defendants were storing and/or maintaining unregistered and/or junked motor vehicles and

3

> other junk at the subject property. . . . There exists bona fide evidence of
> potential zoning violations at the subject property.

(*Id.* ¶¶ 39–40.) Weber signed a verification attached to the complaint, which stated: "I hereby certify that the facts contained in the attached complaint are true to the best of my knowledge and belief." (*Id.* ¶ 41.)

Plaintiffs allege that in testimony at the Connecticut Superior Court injunction hearing on January 28, 2009, Weber admitted that the had "no evidence of an unregistered motor vehicle." (*Id.* ¶ 42.) Weber also testified that contrary to the account in the verified complaint, he had not "received a complaint" regarding violations at 135 Scott Hill Road, but had instead received "a directive from the First Selectman." (*Id.* ¶¶ 43–44.) He further testified that he had no reason to inspect the property prior to the First Selectman's order to do so and that he was "not 100% sure" as to the definition of "junk" under the zoning regulations. (*Id.* ¶¶ 45–46.) He testified that the vehicles he saw at 135 Scott Hill Road "did not appear to be in disrepair" and that he had never previously attempted to inspect the property during his "nine or ten years" as ZEO. (*Id.* ¶¶ 47–48.)

Plaintiffs claim that by these admissions of Weber, they learned that Robbins and Weber did not have probable cause to search their residence and that Weber, Ballinger, and the Town did not have probable cause to "commence, authorize, and/or proceed to trial upon the 2008 litigation." (*Id.* ¶ 49.)

II. Discussion

   A. Collateral Estoppel and Res Judicata

Defendants argue that Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) under the doctrines of *res judicata* and collateral estoppel[2] because the issues presented in the Amended Complaint were considered and decided in the Superior Court injunction litigation as reflected in Judge Purtill's decision in *Town of Bozrah v. Chmurynski*, No. 084008160, 2009 WL 1054647 (Conn. Super. Ct. March 20, 2009) (*Bozrah I*).

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). Under Connecticut law,[3] "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 296 (1991). "For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been *actually decided* and the decision must have been *necessary* to the judgment."

---

[2] Defendants argue that Plaintiffs' claims are barred by both collateral estoppel and *res judicata*, however their arguments in their Motion to Dismiss and during oral argument, focusing on Plaintiffs' full and fair opportunity to be heard, utilize a collateral estoppel rather than *res judicata* analysis. The Court accordingly will evaluate Defendants' arguments using the collateral estoppel standard.

[3] "To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Conopco*, 231 F.3d at 87.

5

*Carol Mgmt. Corp. v. Bd. of Tax Review*, 228 Conn. 23, 32 (1993) (emphasis in original) (citations and internal quotations omitted). "An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Efthimiou v. Smith*, 268 Conn. 499, 507 (2004) (emphasis in original) (citations omitted). "An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.*

"Whenever collateral estoppel is asserted . . . the court must make certain that there was a full and fair opportunity to litigate. . . . [I]f the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." *Jones*, 220 Conn. at 306. If a preliminary or temporary injunction hearing does not include a "full investigation into the merits" of an issue, then it has not afforded a party a full and fair opportunity to litigate and does not have preclusive effect. *See 18 Brewer Assocs., LLC v. Mormino*, No. CVH–01–6792, 2007 WL 4327905, *3 (Conn. Super. Ct. Dec 5, 2007). However, a preliminary injunction hearing can produce a preclusive effect if it meets the collateral estoppel requirements and provides a full and fair opportunity to be heard on the relevant issue, *see, e.g., Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 303–04 (S.D.N.Y. 2007), and a judgment is not deprived of finality for preclusion purposes "by reason of the fact that it grants or denies continuing relief," Rest. (Second) Judgments § 13, cmt. c.

### 1. Retaliation Claims

Defendants argue that Counts One, Two, Six, Nine, and Eleven "are predicated upon a claim that the Defendants instituted the litigation in *Bozrah I* in retaliation for the Plaintiff's activities relative to the decision of the Town of Bozrah Planning and Zoning

Commission" and that these Counts are precluded because Plaintiffs specifically raised the issue of retaliation in *Bozrah I* and Judge Purtill decided the issue. (Mot. at 11–13.) Plaintiffs respond that the issues in the instant case are not identical to those in *Bozrah I*, and that the preliminary injunction hearing in *Bozrah I* did not afford a full and fair opportunity to litigate or a final judgment. (Mem. Opp. [Doc. # 19] at 9–12.)

Retaliation forms the backbone of Counts One, Two, Six, Nine, and Eleven of Plaintiffs' Amended Complaint. Plaintiffs claim in Count One that Defendants denied them "rights, privileges, or immunities secured by The United States Constitution or by Federal law . . . by retaliating against Plaintiffs . . . for appealing the decision of the Town of Bozrah's Planning Zoning Commission." (Am. Compl. ¶ 54.) Count Two similarly sounds in retaliatory conduct where Plaintiffs claim that they were engaged in constitutionally–protected free speech "[i]n appealing the decision" of the Commission and that "Defendants' acts of intimidating, threatening, searching, and authorizing and commencing litigation without probable cause were motivated by the exercise of constitutionally–protected conduct by Plaintiffs." (*Id.* ¶¶ 61, 63.) Count Six claims that Defendants violated 42 U.S.C. § 1985(3) by conspiring "to intimidate and discourage members of the Chmurynski family from pursuing further their aforesaid appeal to the Connecticut Superior Court." (*Id.* ¶ 92.) Count Nine, abuse of process, claims that through their retaliatory conduct Defendants used "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." (*Id.* ¶ 112.) Count Eleven, IIED, claims that by directing that Plaintiff's property "be 'inspected' the morning after Plaintiffs . . . served the aforesaid appeal pursuant to Connecticut General Statutes

7

§ 8–28" Defendant Robbins intended to inflict emotional distress or should have known that emotional distress was a likely result. (*Id.* ¶ 128.)

Anne and Walter Chmurynski raised the issue of retaliation in *Bozrah I*:

> Defendants contend that the attempt by the plaintiffs to search the premises "is an intimidating retaliation in response to the defendants having brought an ordinary administrative appeal of a decision of the Town's Planning and Zoning Commission." The claim is that in this action the plaintiffs are seeking equitable relief but have come into court with unclean hands.

2009 WL 1054647 at *8. Judge Purtill held that there was "no evidence that the bringing of this action was 'intimidating retaliation' to the defendants' appeal from the granting of the DiCocco subdivision application." *Id.* The issue of retaliation was submitted to Judge Purtill for determination, and he made such a determination therefore it was actually litigated. *See Efthimou*, 268 Conn. at 507. Retaliation was likewise necessarily determined as Judge Purtill counted it among the issues claimed by Anne and Walter that "would preclude the court from issuing the relief sought by plaintiffs." *Bozrah I*, 2009 WL 1054647 at *3.

Plaintiffs argue that because the Superior Court opinion in *Bozrah I* was the result of only a temporary injunction hearing rather than a full trial on the merits, the opinion is not a final judgment nor does it reflect a full and fair opportunity to litigate and thus should not have preclusive effect. Plaintiffs' counsel elaborated at oral argument that they "conducted no discovery" and did not question Robbins at the injunction hearing because the Town did not present him as a witness. Plaintiffs' arguments in this respect, however, are not directed towards any procedural limitations of the temporary injunction hearing that limited their opportunity to fully litigate the retaliation issue, *see Jones*, 220 Conn. at 306, only their failure to take advantage of the litigation opportunity afforded them in *Bozrah I*. Judge Purtill's opinion demonstrates that because a successful retaliation claim would have

8

precluded the injunction, he fully considered the issue and found there to be "no evidence" of retaliation. *Bozrah I*, 2009 WL 1054647 at *3, 8. Judge Purtill mentions that Robbins "was not called to testify," but does not say that this was due to any procedural limitation, and in discussing Robbins' failure to testify in connection with Plaintiffs' inability to prove "intimidating retaliation," implies that the Chmurynski family could have called him to shed light on "what interests he may have had in the granting of the subdivision application or what motivated him to request the inspection," but did not. *Id.* at *8. Plaintiffs had a full and fair opportunity to litigate the retaliation issue in *Bozrah I*, they used the injunction hearing as a forum to do exactly that even though they did not present all of the evidence that they now wish to present in this case, and retaliation was actually and necessarily decided by Judge Purtill in *Bozrah I*.

Plaintiffs are accordingly collaterally estopped from bringing their retaliation claims in Counts One, Two, Six, Nine, and Eleven, and these counts are dismissed.

2.   Due Process Rights

Defendants also argue that issue preclusion bars Plaintiffs' claim in Count Four that Michael Chmurynski, Dale Bishop, and Laura Alligood were denied their due process rights because they were not named as parties in *Bozrah I*. (Mot. at 13–17.) Anne and Walter Chmurynski raised this issue in *Bozrah I*:

> It is also argued by the defendants that the rendition of a proper judgment in this case is impossible because all of the necessary parties have not been joined and that any order to permit an inspection of the property 'will trample the rights of persons not provided legal process.' The basis of this claim is that five people live on the property, but only two defendants, Anne D. Chmurynski and Walter Chmurynski have been made parties to this action.

2009 WL 1054647 at *9. In response to this claim, Judge Purtill found that the case could proceed without the additional property owners and that if the Town uncovered zoning violations during the search, "the property owners would be so notified and have an opportunity to correct the violation or to appeal the claimed violation." *Id.*

As with the retaliation claims discussed above, this issue was submitted for determination and necessarily determined as an issue that "would preclude the court from issuing the relief sough by plaintiffs." *Bozrah I*, 2009 WL 1054647 at *3. Plaintiffs' claims in Count Four are accordingly collaterally estopped, and this count is dismissed.

### 3. Unlawful Search

Defendants argue that Counts Three, Seven, and Eight relate to allegations of an unlawful search and are precluded by Judge Purtill's decision in *Bozrah I* "that no search of the premises occurred." In Count Three, Plaintiffs claim violations of their Fourth Amendment rights due to Weber's and the Town's "warrantless search of [their] residence." (Am. Compl. ¶¶ 70–73.) In Count Seven, Plaintiffs claim that the Town failed to supervise, control, and discipline Weber and Robbins and ratified their unlawful, deliberate, malicious, reckless, and wanton conduct. (*Id.* ¶¶ 98–104.) In Count Eight, Plaintiffs claim that Defendants violated their rights under Article First, § 7 of the Connecticut Constitution through the unreasonable search of Plaintiff's property. (*Id.* ¶¶ 107–110.)

Defendants rely on the following passage from *Bozrah I* in arguing that the issue of whether a search occurred at 135 Scott Hill Road has been actually litigated and necessarily determined:

> From his limited observations on the Chmurynski property during the aborted inspections, ZEO Webber did observe approximately six motor vehicles parked, some being on the front lawn. He was, however, unable to

> determine if any of the vehicles were unregistered. Subsequent to the attempted inspections in the fall of 2007, a fence was erected on the property further limiting the ZEO's ability to determine if unregistered motor vehicles existed on the property. The only practical way in which it can be determined if there are unregistered vehicles on the property is an inspection of the premises by the ZEO.
>
> To enable to ZEO the inspect the property, the present action was commenced on March 3, 2008.

2009 WL 1054647 at *2. Defendants also argue that Judge Purtill decided that no search occurred by twice mentioning in *Bozrah I* that Plaintiffs refused to allow Weber to search their property. *Id.* at *5 ("[I]t must be found that where defendants have, on two occasions, refused to allow the ZEO to inspect the premises, such inspection could only be conducted upon the issuance of some judicially granted authority to conduct a search."), *9 ("The ZEO has attempted to inspect such property and determine if any such violations exist. Plaintiffs have refused to allow such inspection.").

Judge Purtill did not, however, list illegal search claims among the issues presented by Anne and Walter Chmurynski that "would preclude the court from issuing the relief sought," and the analysis in *Bozrah I* does not reveal that Anne and Walter presented any claim of an illegal search for determination. Defendants' counsel agreed at oral argument that claims of illegal search "weren't directly made" as part of the *Bozrah I* hearing. That Plaintiffs refused to consent to a search of their property does not necessarily mean that no illegal search actually occurred prior to their refusal, as they claim in their Amended Complaint. Regardless of whether the language from *Bozrah I* quoted above implies that a search of 135 Scott Hill Road did not actually take place in the fall of 2007, this issue was

11

neither submitted for determination nor necessarily determined in *Bozrah I*. This issue is therefore not precluded by collateral estoppel.

### B. Ripeness

Defendants argue that this Court is precluded from considering Plaintiffs' Amended Complaint because it is not yet ripe for review. "Prudential ripeness" depends on two factors: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003) (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49 (1967)). "Fitness" concerns "whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* (quoting *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). "Hardship" concerns "whether the challenged action creates a direct and immediate dilemma for the parties. . . . The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Simmonds*, 326 F.3d at 360 (citations and internal quotations omitted).

As discussed above, Plaintiffs' retaliation claims in Counts One, Two, Six, Nine, and Eleven and due process claims in Count Four have already been litigated in *Bozrah I* and are precluded in this case. In addition, because Plaintiffs' retaliation and due process claims concern the conduct of the state court litigation itself, in that Plaintiffs argue that the litigation was brought in retaliation for their appeal to the Commission and that their due process rights have been violated by the exclusion of some Plaintiffs from that litigation, the pendency of the case in state court means that the extent of the harm to Plaintiffs is

"contingent on future events," *Simmonds*, 326 F.3d at 359, i.e. the ongoing detriment to Plaintiffs in litigating that case and whether or not the town is ultimately able to conduct its full search of the 135 Scott Hill Road property. Therefore, although these claims are precluded by the decision in *Bozrah I*, they are also unripe for review.

However, Plaintiffs' allegations of an unlawful search on their property, as reflected in Counts Three, Seven, and Eight, were not submitted as part of the *Bozrah I* litigation and form no part of that case. The question of whether Weber conducted an illegal search of Plaintiffs' property in the fall of 2007 is therefore not contingent on the outcome of the appeal to the Connecticut Supreme Court. The alleged illegal search does not present the mere possibility of future injury but a claim that Plaintiffs have already been injured through Weber's and the Town's actions. *See Simmonds*, 326 F.3d at 359–60. Counts Three, Seven, and Eight are therefore ripe for review.

Defendants also argue that Counts Five and Ten are not ripe for review because "a determination that the allegations in the Verified Complaint were false; Complaint, Count Five; or that there was a conspiracy to abuse process; Complaint, Count Ten; will have the effect of setting the legal standard by which administrative searches will be judged." (Mot. at 19–20.) Defendants do not elaborate on how these counts—which concern allegations that Weber knowingly and intentionally, or with reckless disregard for the truth, made false statements in the affidavit he submitted as part of *Bozrah I* and lied under oath, and that the Town continued to pursue its injunction in *Bozrah I* even after it was aware of these false statements—would be contingent on future events in the appeal to the Connecticut Supreme Court or eventual trial on the merits in Connecticut Superior Court. Contrary to Defendants' argument, the question of ripeness is not determined by the effect that this case

13

will have on legal standard in any other action, but whether future events in any other action will impact the merits of Plaintiffs' claims in this case. *See Simmonds*, 326 F.3d at 360. Weber's allegedly false statements were not raised in *Bozrah I*, and will not be at issue in the appeal to the Connecticut Supreme Court. Counts Five and Ten concern past events, Weber's statements and testimony, and are not impacted by anything that is yet to occur in the state court litigation. Counts Five and Ten are therefore ripe for review.

III. Conclusion

For the reasons stated above, the Motion to Dismiss [Doc. # 16] is GRANTED in part and DENIED in part. Counts One, Two, Four, Six, Nine, and Eleven are dismissed. All other counts remain for further adjudication.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of July, 2011.